LANDRY, Judge.
Plaintiffs, Albert Payne and Wilbert Albert, Jr., appeal dismissal of their actions for damages for personal injuries and related expenses sustained and incurred as the result of a three vehicle, chain reaction, rear end automobile collision which occurred in the right or outside eastbound lane of the 1-10 Mississippi River Bridge between the Cities of Baton Rouge and Port Allen on the early morning of December 16, 1968. The accident happened when a vehicle owned and being operated by appellants’ host driver, Ernest J. Noel, Jr., the insured of Allstate Insurance Company (Allstate), ran into the rear of a parked pickup truck owned and being driven by Eugene Hackworth, insured of Fidelity and Casualty Company of New York (Fidelity). The impact drove the Hackworth vehicle into the rear of a disabled vehicle belonging to and being driven by Hackworth’s acquaintance, John Richard, the insured of State Farm Mutual Automobile Insurance Company (State Farm). The Richard vehicle had stalled due to engine trouble and Hackworth had stopped to the rear thereof to render assistance.
Appellants, both of whom were severely injured, filed suit against Allstate, Hack-worth, Fidelity, Richard and State Farm; they did not sue their host driver, Noel. In essence appellants contend Noel was negligent in not keeping a proper lookout, failing to maintain his vehicle under control, and driving at an excessive rate of speed. Defendants, Hackworth and Richard, are charged with negligence in failing to adequately protect traffic under the circumstances in violation of LSA-R.S. 32:141. The trial court found that Noel was solely responsible for the accident, and rejected appellants’ claims against Hack-worth and Richard and their respective insurers. We affirm.
There is little dispute, if any, concerning the events and circumstances attending the accident. The accident happened at about 6:00 A.M., early dawn, on an extremely cold morning. The record establishes that the bridge was well lighted; one witness describing visibility as being “almost like daylight.” Richard was driving his Pontiac car easterly in the right or outside lane of the three eastbound lanes of the bridge. He was accompanied by Paul Jordan, Larry Bias and Robert Richard, all fellow workers. The party was en route to their jobs at a construction site in the Baton Rouge area. As the Richard vehicle neared the crest of the bridge, its engine stalled. Richard stopped the vehicle west of the bridge crest in the outside lane and attempted to restart the engine. The engine would not start, therefore, Richard’s passengers alighted from the car and commenced pushing the vehicle toward the crest of the bridge with the view of coasting the vehicle down the other side once the crest was passed. While this attempt to move the vehicle was in progress, and after *790 the car had been moved only a few feet, Hackworth, who worked on the same job as Richard, came upon the scene. Hackworth was driving a pickup truck on the bed of which he had constructed a “plywood camper” to accommodate fellow workers whom he transported to work for a set daily rate. The Camper was painted green. Access thereto was provided by a rear glass door.
Hackworth was accompanied by Clarence Jones, who sat in the truck cab, and also accompanied by Lawrence Triggs and Gene Shelby, who were seated in the camper. Proceeding in the center lane at about 45-50 miles per hour, Hackworth recognized Richard’s Pontiac, and also recognized Jordan, Bias and Robert Richard attempting to push the Richard car when Hackworth reached a point 200 to 300 feet away. Hackworth then pulled into the outside lane, and stopped his truck approximately 10 to 15 feet to the rear of the disabled Pontiac. Triggs and Shelby alighted from the truck; Hackworth and Jones remained in the vehicle. It was decided that Hackworth would push the Pontiac off the bridge provided the bumpers of the vehicles would match. Hackworth then slowly pulled his vehicle to within four or five feet of the Richard car, at which point it was determined the bumpers would not match, therefore, pushing the stalled car was out of the question. At this juncture, Hackworth directed his passengers to get into the cab of the truck because the weather was so cold. Hackworth then intended to drive around the stalled car and proceed off the bridge to obtain other assistance. As Hackworth was in the act of starting his engine, or while he was slowly backing to get room to go around the stalled car, the eastbound Noel vehicle crashed into the rear of Hackworth’s truck. Noel did not see the Hackworth truck until he was about 50 to 60 feet distant from it. Noel veered to his left, but could not avoid striking the truck in the rear.
The evidence reflects that the front and rear of both the Richard Pontiac and the Hackworth truck were properly equipped with dual headlights and taillights as required by law, and that at the time of the accidents, all lights on the vehicles were burning. There is some uncertainty whether the “flasher lights” on the pickup truck were in operation at the time of impact. In this regard, the record shows that Hackworth had activated his flasher lights, but that the lights would not flash off and on while his brake pedal was depressed, and Hackworth was not certain whether or not his foot was on the brake at the moment of impact.
There is no serious dispute among the witnesses concerning the time interval between the stalling of the Richard vehicle and the occurrence of the accident. The various estimates ranged between about three to about seven minutes. It is conceded that no one attempted to set out flares or other warning devices or otherwise alert eastbound vehicles to the presence of the vehicles parked in the outside lane of traffic.
In essence plaintiff’s host driver, Noel, testified he was proceeding at a speed of 50-55 miles per hour and did not see the Hackworth truck until he was about 50 to 60 feet away.
The trial court found: (1) both parked vehicles were properly and adequately lighted; (2) only a short span of time, about three to four minutes, elapsed between the time the Richard vehicle stalled and the accident happened; (3) the bridge was well lighted, and there was no reason why Noel could not have seen the parked vehicles in time to avoid the accident; (4) the center and inside lanes of the bridge were open and available to Noel had he been maintaining a proper lookout; (5) neither Hackworth nor Richard were negligent in failing to flag or otherwise warn approaching motorists because visibility was excellent at the time, and (6) that the sole and only cause of the accident was Noel’s failure “to see what he should have seen, that is, the two stopped vehicles in the third lane of the bridge, and his failure *791 to take remedial action to avoid the accident.”
The trial court awarded judgment in favor of Payne and Albert in the sum of $10,000 each against Allstate, whose policy provided maximum recovery of $10,000 for any one person and $40,000 for a single accident. On appeal Payne and Albert contend that the trial court erred in exonerating Hackworth and Richard and their respective insurers. Appellants also ask an appreciable increase in the amounts of their respective awards. In other actions consolidated with the claims of Payne and Albert, judgment was rendered in favor of Hackworth, John Richard, Bias and Jordan against Noel and Allstate; all of said judgments have become final as no appeals were taken therein.
In substance, appellants complain that the trial court erred in failing to find Hackworth and Richard guilty of negligence proximately causing the accident because of their failure to comply with LSA-R.S. 32:141, which reads as follows:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.”
The basis of appellants’ argument is that Hackworth and Richard violated Paragraph B of the above quoted statute by failing to discharge their responsibility of protecting traffic under the circumstances. It is urged that Hackworth and Richard were negligent in failing to either set out flares or other warning devices behind the parked vehicles or station a flagman to the rear of the pickup truck to alert motorists to the fact that the vehicles were parked.
Relying upon the doctrine announced in Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298, appellants maintain that such alleged violation of the applicable statute was negligence per se, and that it also constituted a proximate or legal cause of the accident thus rendering Hackworth and Richard liable herein.
We agree that the general rule announced in Dixie Drive It, above, is applicable herein inasmuch as defendants’ liability must be determined on the basis of whether or not their failure to protect traffic by setting out flares, warning devices or stationing a flagman was a proximate cause of the accident. It is elementary that each case of this nature presents a different set of facts, and that the finding of proximate cause must be resolved in the light of the circumstances of each particular case.
We agree with the finding of the trial court that the failure to set out flares or station a flagman or otherwise attempt to protect traffic was not a legal or proximate cause of the accident in question. In this instance, the Richard car stalled due to unforeseen circumstances beyond Richard’s control. Richard stopped his vehicle in the extreme outside lane of the three eastbound lanes as close to the bridge railing *792 as feasibly possible. There was no shoulder on which Richard could stop. He chose the safest place available. Two other lanes of traffic were open to eastbound motorists. Traffic on the bridge was not heavy. The bridge was adequately lighted. Noel’s vision of the parked vehicles was not impeded. If Hackworth could recognize, from a distance of 200 to 300 feet, the parked Richard car and the persons attempting to push it, there appears no reason why Noel should not have observed Hackworth’s truck sooner then he allegedly did. We likewise find that the actions of the drivers, Richard and Hackworth, were reasonable under the circumstances. An interval of approximately five minutes elapsed between the time Richard’s car stalled and the accident occurred. During this time, the drivers and occupants of the vehicles were busily engaged in 'activities reasonably calculated to remove the disabled vehicle from the bridge. Under the circumstances, we find that the failure to put out flares or station a flagman did not constitute a legal cause of the accident. We find, as did the trial court, that the sole legal or proximate cause of the accident was Noel’s failure to maintain a proper lookout, and his failure to timely see the parked vehicle and switch to an available unobstructed lane of travel.
Paragraph B of the applicable statute requires only that the driver of a stalled vehicle take reasonable steps, under the circumstances, to protect traffic. We note that, as a matter of justice and equity, the law will not impose upon a “good Samaritan” who stops in aid of a distressed motorist, a burden of care greater than that required of the driver of the disabled vehicle.
The cases relied upon by appellants as authority for the proposition that Hack-worth and Richard were guilty of actionable negligence are all factually distinguishable.
In Landry v. Meligan, La.App., 245 So. 2d 782, a driver was held contributorily negligent for stopping his vehicle at night without lights in such manner as to block one lane of a two lane, two way highway when a shoulder was available for him to park on to fix a flat tire.
Lobell v. American Indemnity Company, La.App., 211 So.2d 439, imposed liability on a driver who was engaged in pushing his disabled car to the neutral ground of a major highway. The court found that the driver should have immediately driven his car onto the neutral ground when it began to lose headway instead of playing with the gears when it became apparent the vehicle would stall.
In LaDousa v. Johnson, La.App., 250 So.2d 158, the driver of a vehicle was deemed negligent for blocking both eastbound lanes of a four lane highway and failing to warn traffic although she had time to do so.
In Riels v. Howell, La.App., 243 So.2d 280, the driver of a disabled car failed to steer her vehicle onto the shoulder of the road.
Champagne v. Southern Farm Bureau Casualty Company, La.App., 170 So.2d 226, involved a situation where the driver of a truck failed to see that the vehicle lights were burning on a vehicle blocking one lane of a two lane, two way highway. Virtually the same circumstances were involved in Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821.
Appellants cite two cases involving vehicles disabled on a bridge. Hernandez v. State Farm Mutual Automobile Insurance Co., La.App., 192 So.2d 679, held a driver liable for permitting his unlighted vehicle to remain parked on a bridge, on a foggy night, without taking measures to warn oncoming motorists.
In Hightower v. Dixie Auto Insurance Company, La.App., 247 So.2d 912, the driver of a vehicle was held liable for stopping just over the crest of a bridge to fix a flat tire during peak traffic. The court there found that the vehicle was parked in such proximity to the crest of the bridge that it could not be seen until an oncoming motor *793 ist was virtually upon it. The court also found that the vehicle was operational, and could have been driven off the bridge by means of an exit relatively close at hand.
Appellants’ claims for increased awards must be denied. It suffices to state that the extent and severity of appellants’ injuries, and the permanent disability and loss of future earnings resulting therefrom, warrant, in each instance, recovery considerably in excess of the $10,000 awarded by the trial court. However, under the circumstances, any increase in the awards would avail appellants nothing. Appellants did not pursue their host driver, Noel. Appellants are not entitled to recovery against either Hackworth or Richard or their respective insurers. The liability of Allstate, the sole defendant against whom appellants may recover, is limited by Allstate’s policy to $10,000 for each individual. To increase the award would be vain and futile. The courts will not render judgments which are futile and meaningless.
The judgment of the trial court is affirmed. All costs of these appeals to be paid by appellants, Albert Payne and Wilbert Albert, Jr., in equal portions.
Affirmed.