HIGGINBOTHAM, J.
| ¡¡Plaintiff's in these consolidated cases, Cynthia Daniels, Katie Daniel, and Lucy Austin, appeal from a summary judgment rendered in favor of defendants, Tessie Parrish and Southern Underwriters Insurance Company, dismissing plaintiffs’ claims against those defendants. After de novo review, we affirm the judgment of the district court.
FACTS AND PROCEDURAL BACKGROUND
This case involves two successive incidents that occurred during a rainy day on August 19, 2008, on an elevated northbound section of Interstate 55 (1-55) between New Orleans and Hammond, Louisiana. The chain of events began when one of the defendants, Charlene Hoyt, lost control of her vehicle while driving in the right lane of 1-55 north. Charlene swerved to avoid another vehicle that was. drifting into the right lane. Her vehicle began to spin and then struck the left-side concrete barrier on 1-55, coming to rest across and completely blocking the northbound left lane.
Tessie Parrish was traveling behind Charlene’s vehicle with her headlights and windshield wipers activated. Tessie witnessed Charlene’s vehicle hit the concrete barrier and then come to a stop in a position that was almost perpendicular to the road and completely blocking the left northbound lane of travel. Tessie slowed and parked her pickup truck approximately 20 yards behind Charlene’s disabled vehicle. Because the shoulder was too narrow for Tessie to park completely off the roadway, she parked partially in the left lane and partially on the narrow left shoulder, so that she could render assistance as well as protect the occupants in Charlene’s vehicle, which was disabled and vulnerable to oncoming traffic. When Tessie exited her vehicle, she' left the engine running while she checked on Charlene. Tessie observed that Charlene’s airbag had deployed, that Charlene was bleeding, and that Charlene appeared to be ^disoriented. Tessie left Charlene in her car while she returned to her own vehicle to retrieve her cell phone in order to call 911 for help. According to Tessie and Charlene’s affidavits, the emergency flasher lights on Tessie’s vehicle were activated. Charlene also attested that she observed another vehicle had parked directly in front of her disabled car in the left lane, and that particular driver began waving oncoming traffic into the right lane, around the accident scene that was blocking the left lane.
At this point, which was roughly five to ten minutes after Charlene’s initial crash into the concrete barrier, Tessie heard screeching tires as another vehicle, driven by Lucy Austin, skid toward and collided *1053 with the rear of Tessie’s pickup truck. Lucy had been traveling in the left northbound lane but she did not see Tessie’s stopped vehicle until a car that was directly in front of her and blocking her view suddenly swerved around Tessie’s vehicle into the right lane. Lucy and one of her passengers, Cynthia Daniels, testified in their depositions that Tessie’s vehicle did not have any lights on at all. Lucy stated that once she saw Tessie’s vehicle, she had absolutely no time to stop, and she could not move into the right lane because of a truck in that lane. As a result, she crashed into the back of Tessie’s vehicle. Lucy and her two passengers, Cynthia Daniels and Katie Daniel, were injured.
Cynthia, Katie, and Lucy (collectively referred to as “plaintiffs”) each filed separate lawsuits, which were later consolidated in the district court for trial against Tessie and her liability insurer, Southern Underwriters Insurance Company, as well as other defendants who are not relevant to this appeal.[1] All plaintiffs |BaIleged that Tessie’s negligence was a cause of the accident. Southern Underwriters and Tessie (collectively referred to as “defendants”) filed a motion for summary judgment, relying on the facts as alleged in plaintiffs’ petitions and the affidavits of Tessie and Charlene to establish there was no genuine issue of material fact that Tessie had acted reasonably as a “rescuer” and had not breached any duty owed to plaintiffs, and therefore, plaintiffs’ claims against defendants should be dismissed as a matter of law. Plaintiffs opposed the summary judgment, relying on Cynthia’s and Lucy’s deposition testimony, and essentially arguing that there are genuine issues of material fact regarding whether Tessie was a rescuer, the reasonableness of her actions, and whether she had breached a duty to warn oncoming motorists by not activating her emergency flasher lights or using some other warning device.
After a hearing, the district court ruled in favor of the defendants, and on March 22, 2011, a final judgment was signed, dismissing plaintiffs’ claims against Tessie and Southern Underwriters, in accordance with La. C.C.P. art. 1915(A). Plaintiffs filed separate devolutive appeals of that judgment, which were consolidated on the docket of this court. Each plaintiff asserts that the district court prematurely and incorrectly granted summary judgment, because discovery had not been completed and because various factual issues precluded summary judgment.
LAW AND ANALYSIS
Plaintiffs argue there are still material factual issues to be resolved, and the summary judgment was premature due to a lack of discovery. However, we note that plaintiffs did not file a motion for continuance or for additional discovery before the district court heard defendants’ motion for summary judgment. Code of | (¡Civil Procedure article 966 deals with the procedure for filing a motion for summary judgment, and paragraph (A)(1) permits the defendant to file the motion at any time. Paragraph (C)(1) states that “[ajfter *1054 adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” (Emphasis added.) It is well settled that trial courts in Louisiana have broad discretion when regulating pretrial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse. Moak v. Illinois Cent. R. Co., 93-0783 (La.1/14/94), 631 So.2d 401, 406.
It is not an abuse of the district court’s wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. It is within the trial court’s discretion to render a summary judgment or require further discovery. Thomas v. Willis-Knighton Medical Center, 43,176 (La.App.2d Cir.4/30/08), 981 So.2d 807, 814, writ denied, 2008-1183 (La.9/19/08), 992 So.2d 932. While parties must have a fair opportunity to conduct discovery and present their claims, there is no absolute right to delay action on a motion for summary judgment until discovery is complete. Welch v. East Baton Rouge Parish Metropolitan Council, 2010-1532 (La.App. 1st Cir.3/25/11), 64 So.3d 249, 254; Green v. State Farm General Ins. Co., 35,775 (La.App.2d Cir.4/23/02), 835 So.2d 2, 6. A suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact, and the plaintiff does not show a probable injustice in proceeding with the suit. Welch, 64 So.3d at 254.
The key witnesses who could arguably support plaintiffs’ claims were not unknown or unavailable to plaintiffs, yet the record shows that plaintiffs did not initiate any discovery during the nearly four-month period between serving Tessie and the hearing on Tessie and Southern Underwriter’s motion for summary 17judgment.[2] Nor did plaintiffs file a motion for continuance of the hearing on the motion. Under these circumstances, the district court did not abuse its discretion in proceeding with the hearing on the motion for summary judgment, based on the pleadings, depositions, and affidavits in the record.
An appellate court reviews a district court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Granda v. State Farm Mut. Ins. Co., 2004-2012 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 701. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). On a motion for summary judgment, if the moving party will not bear the burden of proof at trial, the moving party’s burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that it will be able to satisfy its eviden-tiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. La. C.C.P. art. 966(C)(2).
Tessie and her insurer, Southern Underwriters, would not bear the burden of proof at trial; therefore, their burden on the motion for summary judgment did not *1055 require that they negate all essential elements of plaintiffs’ negligence claims. Rather, their burden on the motion for summary judgment was to point out to the court that there was an absence of support for one or more elements essential to plaintiffs’ negligence claims. La. C.C.P. art. 966(C)(2). See Babin v. Winn-Dixie Louisiana, Inc., 2000-0078 (La.6/30/00), 764 So.2d 37, 39. See also Robles v. ExxonMobile, 2002-0854 (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341. At that point, the burden would shift to plaintiffs to present evidence that genuine issues of material fact existed as to whether defendants were negligent and whether that negligence caused the accident at issue.
Material facts are those that potentially insure or preclude recovery, affect the litigant’s success, or determine the outcome of a legal dispute. Gatlin v. Kleinheitz, 2009-0828 (La.App. 1st Cir.12/23/09), 34 So.3d 872, 875, writ denied, 2010-0084 (La.2/26/10), 28 So.3d 280. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Lemann v. Essen Lane Daiquiris, Inc., 2005-1095 (La.3/10/06), 923 So.2d 627, 632. Plaintiffs’ claims in this case are based upon Tessie’s alleged negligence. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. Id., 923 So.2d at 632-33. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) the actual damages (the damage element). Id., 923 So.2d at 633. A negative answer to any of the elements of the duty-risk analysis prompts a no-liability determination. Joseph v. Dickerson, 99-1046 (La.1/19/00), 754 So.2d 912, 916.
Duty is a question of law and is a threshold issue in any negligence action. Lemann, 923 So.2d at 633; Fredericks v. Daiquiris & Creams of Mandeville, L.L.C., 2004-0567 (La.App. 1st Cir.3/24/05), 906 So.2d 636, 639, writ denied, 2005-1047 (La.6/17/05), 904 So.2d 706. Simply put, the inquiry is whether a plaintiff has any law — statutory, jurisprudential, or arising from general principles of fault — to support the claim. Fredericks, 906 So.2d at 639. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. Lemann, 923 So.2d at 633. See also Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment.[3] Fredericks, 906 So.2d at 639.
In this case, defendants argue that Tessie was a “rescuer” who acted reasonably under the exigent circumstances when she witnessed Charlene’s ve- *1056 hiele suddenly spin out of control, crash into the concrete barrier, and become disabled as it completely blocked the left northbound lane on 1-55 directly in front of her. A rescuer is someone who makes some effort or takes some action to protect the personal safety of another, who was or appeared to be in imminent peril. See Stevenson v. Delahaye, 310 So.2d 651, 653-54 (La.App. 1st Cir.1975).
Plaintiffs counter that Tessie breached the duty imposed by La. R.S. 32:141, which provides as follows:
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such a highway.
|1flB. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence. If the vehicle is not removed from the highway within twenty-four hours, the provisions of R.S. 32:473.1(B) shall apply.
D. In the event of a motor vehicle accident, if the driver is not prevented by injury and the vehicle is not disabled by the accident, or the accident has not resulted in serious injury or death of any person, the driver shall remove the vehicle from the travel lane of the highway to the nearest safe shoulder. Compliance with the provisions of this Subsection shall in no way be interpreted as a violation of requirements to remain at the scene of an accident as provided for in the Highway Regulatory Act or by R.S. 32:414.
This statute imposes a two-fold duty on drivers of vehicles stopped on a highway: (1) to remove the vehicle as soon as possible; and (2) to protect traffic until the vehicle is removed. Laizer v. Kosarek, 2009-0277 (La.App. 4th Cir.6/24/09), 16 So.3d 442, 446.
Plaintiffs argue that Tessie violated Subsection B of the above-quoted statute by failing to discharge her responsibility of protecting traffic under the circumstances. Plaintiffs maintain that there is a genuine issue of material fact as to whether Tessie activated her emergency flashers when she stopped and left her vehicle partially in the left lane of travel. We disagree with plaintiffs as to the materiality of this disputed fact. After stopping in a timely manner to avoid hitting Charlene’s disabled vehicle, Tessie parked her vehicle as far off the road as possible in an area where there was little to no shoulder, with the intent of rendering aid and protecting the occupants of Charlene’s disabled vehicle. The right lane and right shoulder of 1-55 were not blocked in any way, so northbound motorists could still freely pass the blocked left lane. Lucy’s deposition testimony clearly reveals that Lucy did not see Tessie’s vehi *1057 cle in time to stop because of a |ncar that was blocking the view directly in front of her, not because of the lack of flashing lights on Tessie’s vehicle. Furthermore, La. R.S. 32:141(C) only requires that signal lights be displayed if the vehicle is left parked on a highway when it is dark (between sunset and sunrise). It is undisputed that this accident occurred during the daytime, and Lucy’s view of Tessie’s vehicle was blocked until it was too late for Lucy to safely stop. To hold that warning devices or flashing signal lights might have helped Lucy avoid this accident would be sheer speculation. See Warren v. Hunter Truck Lines, Inc., 289 So.2d 257, 261 (La.App. 1st Cir.1973), writ denied, 290 So.2d 910 (La.1974).
We find, as did the district court, that Tessie’s actions were reasonable under the circumstances, and she did not breach any duty owed to plaintiffs. An interval of approximately five to ten minutes elapsed between the time when Charlene’s car became disabled and when the accident between Lucy’s and Tessie’s vehicles occurred. During this time, Tessie was actively engaged in activities that were reasonably calculated to aid Charlene— such as parking in a way that she could protect Charlene’s vulnerable and disabled vehicle from being hit broadside, checking on Charlene to see if she was injured, and attempting to call 911 for assistance. Additionally, because the highway was already obstructed, Tessie’s placement of her vehicle between Charlene’s disabled vehicle and the oncoming traffic was an attempt to protect other motorists from the disabled vehicle that had previously blocked the entire left lane of travel. Tessie clearly had no control over the location of Charlene’s disabled vehicle, and it was undisputed that the left northbound shoulder of 1-55 was too narrow for Tessie’s vehicle to park completely off of the roadway. It was also undisputed that another motorist who had parked directly in front of Charlene’s disabled vehicle in the left lane was waving traffic around the accident scene and into the open right lane of travel.
1 12This is a case where Tessie acted upon a sudden impulse to come to the aid of Charlene, who was in immediate danger of being hit broadside by oncoming traffic on an interstate highway. As such, application of the rescuer doctrine is warranted. See Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 746; Stapleton v. Great Lakes Chemical Corp., 93-1355 (La.11/29/93), 627 So.2d 1358, 1362-63. Contrast Bangs v. Government Emp. Ins. Co., 387 So.2d 1323, 1325 (La.App. 1st Cir.1980). A rescuer is looked on with favor in the eyes of the law, and is not chargeable with negligence merely because she failed to make the wisest choice when rendering aid. See Chastain v. Allstate Ins. Co., 212 So.2d 243, 244 (La.App. 2d Cir.1968). Subsection B of La. R.S. 32:141 requires that the driver of a disabled vehicle take reasonable steps, under the circumstances, to protect traffic until the vehicle can be removed. The law will not impose upon a person who stops in aid of a distressed motorist, a burden of care greater than that required of the driver of the disabled vehicle. Payne v. Allstate Ins. Co., 256 So.2d 788, 792 (La.App. 1st Cir.1971), writ denied, 260 La. 1123, 258 So.2d 376 (1972).[4] We *1058 find that Tessie’s actions of placing her vehicle where she did and checking on the occupants of Charlene’s vehicle were commendable and reasonable under the circumstances, and were intended to benefit Charlene and the motorists approaching the scene of Charlene’s accident.
CONCLUSION
In summary, we conclude that under the facts presented, there was no legal duty that required Tessie to activate her emergency flashing signal lights while she rendered aid to Charlene. In the absence of any legal duty, plaintiffs cannot satisfy their evidentiary burden of proof as to Tessie’s negligence. Further, we find that | ^defendants met their burden of pointing out that plaintiffs could not show that Tessie’s conduct constituted a breach of any duty owed by a rescuer who was confronted with an emergency situation. Plaintiffs failed to submit proof that Tessie’s conduct was unreasonable under the circumstances. Therefore, Tessie and Southern Underwriters are entitled to summary judgment as a matter of law. Accordingly, we affirm the judgment of the district court. All costs of the appeals in these consolidated cases are to be paid by plaintiffs-appellants, Katie Daniel, Cynthia Daniels, and Lucy Austin, in equal portions.
AFFIRMED.
CARTER, C.J., concurs in the results.

. Cynthia Daniels filed the first lawsuit (trial court number 575,875) on February 27, 2009, against Tessie Parrish, Tessie’s employer and owner of the pickup truck, Express Marketing, Inc., and the insurer of the pickup truck, Southern Underwriters. Cynthia also sued Lucy Austin and Charlene Hoyt and their respective insurers, USAgencies and State Farm Fire and Casualty Company. Katie Daniel's lawsuit (trial court number 578,734) was filed against the same defendants on May 27, 2009. Lucy Austin filed her lawsuit (trial court number 581,566) on August 18, 2009, against Tessie, her employer, Express Marketing, and the insurer of the pickup truck, Southern Underwriters. These three actions were consolidated in the district court.

. The record reflects that service on Tessie was accomplished by private process server on November 22, 2010, and the hearing on the motion for summary judgment took place on March 14, 2011.

. A trial court cannot make credibility determinations or evaluate the weight of the evidence on a motion for summary judgment; instead, the trial court must assume that all of the witnesses are credible. All Crane Rental of Georgia, Inc. v. Vincent, 2010-0116 (La.App. 1st Cir.9/10/10), 47 So.3d 1024, 1027, writ denied, 2010-2227 (La. 11/19/10), 49 So.3d 387.

. In Payne, 256 So.2d at 790-91, we similarly held that a three to seven-minute time period between the time a rescuer stopped his car behind a disabled car and when a following car hit the parked car was not unreasonable, even though a factual dispute existed surrounding the rescuer’s use of flasher lights, and the rescuer did not use flares or other warning devices to alert other motorists. However, the length of time a vehicle remains parked on a highway is not a determinative factor in cases of this nature. Warren, 289 So.2d at 260.