STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0534

DERRICK DAIGREPONT

VERSUS

EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION,
EXXONMOBIL PIPELINE COMPANY, TURNER INDUSTRIES GROUP,
LLC, TURNER INDUSTRIAL MAINTENANCE, LLC, & FLOWSERVE,
INC.

CONSOLIDATED WITH

NUMBER 2021 CA 0535

RODNEY WANNER

VERSUS

EXXON MOBIL CORPORATION, EXXONMOBIL GLOBAL SERVICES,
COMPANY, EXXONMOBIL CHEMICAL COMPANY, EXXONMOBIL
RESEARCH & ENGINEERING COMPANY, BROCK INDUSTRIAL
SERVICES, LLC, TOTAL SAFETY U. S., INC., UNITED RENTALS
(NORTH AMERICA), INC., FLOWSERVE US INC., & JONATHON
ZACHARY

Judgment Rendered: _____ **DEC 3 0 2021** _____

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C657026 c/w C658372, Section 27

Honorable Trudy White, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Darrell J. Papillion                    Counsel for Plaintiff/Appellant,
Renee C. Crasto                         Derrick Daigrepont
Jennifer Wise Moroux
Baton Rouge, LA

Jere Jay Bice
Lake Charles, LA

J. Kyle Findley
Kala Flittner Sellers
Houston, TX

Counsel for Plaintiff/Appellant,
Rodney Wanner

A.M. "Tony" Clayton
Michael P. Fruge
Richard J. Ward, III
Port Allen, LA

Thomas M. Flanagan
Sean P. Brady
Anders F. Holmgren
New Orleans, LA

Michael P. Bienvenu
Brent E. Kinchen
Valerie Briggs Bargas
Gregory P. Aycock
Baton Rouge, LA

Counsel for Defendant/Appellee,
Flowserve US, Inc.

Arthur H. Leith
C. Keiffer Petree
Sarah E. McMillan
New Orleans, LA

Counsel for Defendant/Appellee,
Jacobs Engineering Group, Inc.

Thomas W. Darling
Laura W. Christensen
Baton Rouge, LA

Counsel for Defendant/Appellee,
Setpoint Integrated Solutions, Inc.

Charles M. Jarrell
Opelousas, LA

Counsel for Intervenor/Appellee,
Indemnity Insurance Company of
North America

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE:  WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

2

**WHIPPLE, C.J.**

This matter is before us on appeal by plaintiff, Derrick Daigrepont, from a judgment of the trial court granting summary judgment in favor of defendant, Flowserve US, Inc., and dismissing plaintiff's claims against Flowserve US, Inc., with prejudice. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

This case arises out of an explosion and fire which occurred in the Sulfuric Acid Alkylation Unit (Alky Unit) at the Exxon Mobil Corporation (Exxon) refinery in Baton Rouge, Louisiana on November 22, 2016. At the time of the explosion, pipeline work was taking place in the Alky Unit. Daigrepont was working nearby when Jonathan Zachary, an employee of Exxon and the Alky Unit operator, was performing work on a plug valve that was connected to a pressurized isobutane line. Zachary was unable to operate the valve using the handwheel installed on top of the valve. Rather, while the isobutane line was still in use and the valve was pressurized, Zachary began to remove the valve's gearbox in order to gain access to the valve stem, which he intended to open with a pipe wrench. Four vertical bolts secured the L-shaped gearbox bracket to the plug; these four bolts were also used to secure the bonnet/top cap of the valve, which is a pressure-containing component of the valve. When Zachary removed the valve's gearbox, because the line was still pressurized, isobutane escaped the line via the now opened plug valve and entered into the atmosphere. The isobutane reached an ignition source, believed to be a welding machine located north of the valve, causing an explosion and fire that injured several people in the area.

---

[1] We note that there are multiple parties and multiple judgments before this court on review. The case now before us is a consolidated action involving suits by two different plaintiffs, Derrick Daigrepont and Rodney Wanner, stemming from the November 22, 2016 explosion at the ExxonMobil refinery. Their underlying suits were consolidated by the trial court on April 16, 2018 for trial and discovery purposes.

On April 11, 2017, Derrick Daigrepont filed suit to recover damages against various defendants,[2] alleging that as a result of the explosion, he "sustained severe and debilitating injuries and burns." As pertinent to this appeal, Daigrepont alleged that Flowserve US, Inc. (Flowserve) manufactured the plug valve,[3] and its "failure contributed to the explosion, because its product was not properly designed and/or manufactured and possessed one or more vices or defects making it unreasonably dangerous to normal use." Additionally, Daigrepont asserted various Louisiana Products Liability Act (LPLA), LSA-R.S. 9:2800.51, *et seq,*, claims and negligence claims against Flowserve. Another plaintiff in this matter, Rodney Wanner, who was also injured in the explosion and fire, filed a separate petition for damages against various defendants, including Flowserve, and on his motion, the two actions were consolidated under Daigrepont's lawsuit.

After extensive discovery, Flowserve filed a motion for summary judgment and/or motion for partial summary judgment on August 29, 2019, seeking dismissal of all of Daigrepont's and Wanner's claims against it. Flowserve argued that summary judgment was proper because the LPLA is the exclusive theory of recovery available to Daigrepont and Wanner in their claims against Flowserve as the manufacturer of the valve at issue in this case, and Daigrepont and Wanner would be unable to meet their burden of proof under the LPLA at trial. Daigrepont and Wanner jointly opposed Flowserve's motion, arguing that the LPLA issues in this case are fact issues that are not appropriate for summary judgment because there is "ample evidence" from which a jury could conclude that "(1) Flowserve

---

[2] After Daigrepont filed his first amending and supplemental petition for damages, the named defendants in this matter are: Exxon; ExxonMobil Oil Corporation; ExxonMobil Global Services Company; ExxonMobil Research & Engineering Company; ExxonMobile Pipeline Company; Turner Industries Group, LLC; Turner Industrial Maintenance, LLC; Brock Industrial Services, LLC; Flowserve; Total Safety U. S., Inc.; United Rentals (North America), Inc.; and Jonathan Zachary.

[3] The valve was manufactured by Flowserve's predecessor-in-interest, the Duriron Company, Inc. For purposes of this opinion, all references will be to Flowserve.

4

reasonably expected an operator like Zachary to use [the] valve in this fashion, (2) Flowserve failed to adequately warn of grave dangers of which it was acutely aware, and (3) Flowserve's valve was unreasonably dangerous in design."

A hearing was held on October 2, 2019, after which the trial court orally granted the motion for summary judgment, and found that although Flowserve manufactured the valve, it was "in the custody, care and control of Exxon… [who was] at all pertinent times…a sophisticated user of the product." On October 18, 2019, the trial court signed two separate judgments in accordance with its oral ruling, granting summary judgment in favor of Flowserve and dismissing all of Daigrepont's and Wanner's claims against Flowserve with prejudice.

Daigrepont appeals,[4] contending that the trial court erred in granting summary judgment in favor of Flowserve because genuine issues of material fact exist as to whether: (1) Flowserve reasonably anticipated Zachary's use of the valve; (2) the sophisticated user defense was available and applied to the case; (3) Flowserve provided an adequate warning; and (4) an alternative design existed under the LPLA.[5]

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall

---

[4] Wanner also filed a separate appeal from the judgment dismissing his claims against Flowserve with prejudice that was docketed under Docket Number 2021 CA 0538 c/w 2021 CA 0539. That appeal is addressed in a separate opinion also rendered this date.

[5] At the hearing on the motion for summary judgment, Daigrepont agreed with the dismissal of his LPLA clams that the valve was unreasonably dangerous in construction or composition and unreasonably dangerous because it does not conform to an express warranty. See LSA-R.S. 9:2800.55 and 9:2800.58. Daigrepont also conceded that the LPLA is his exclusive remedy as against Flowserve. Accordingly, Daigrepont does not appeal the dismissal of those claims.

be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). In reviewing a trial court's ruling on a motion for summary judgment, an appellate court reviews the evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Bourg v. Safeway Ins. Co. of Louisiana, 2019-0270 (La. App. 1st Cir. 3/5/20), 300 So. 3d 881, 888. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C., 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So. 3d 441, 445, writ denied, 2018-0583 (La. 6/1/18), 243 So. 3d 1062.

The initial burden of proof is on the party filing the motion for summary judgment. LSA-C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue raised in the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense. However, the mover must demonstrate the absence of factual support for one or more of the elements of the adverse party's claim. LSA-C.C.P. art. 966(D)(1). The mover can meet this burden by filing supporting documentary evidence with its motion for summary judgment, consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions. LSA-C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must be sufficient to prove the essential facts necessary to carry the mover's burden. Thus, in deciding a motion for summary judgment, the court must first determine whether the supporting documents presented by the mover are sufficient to resolve all material factual issues. If not, summary judgment must be denied in favor of a trial on the merits. Crockerham v.

6

Louisiana Medical Mutual Ins. Co., 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So. 3d 604, 608.

Once a motion for summary judgment is made and properly supported, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support with its opposition which proves the existence of a genuine issue of material fact, LSA-C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. Jenkins v. Hernandez, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So. 3d 315.

Material facts are those that potentially ensure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Daniels v. USAgencies Casualty Ins. Co., 2011-1357 (La. App. 1st Cir. 5/3/12), 92 So. 3d 1049, 1055. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Georgia-Pacific Consumer Operations, LLC, 255 So. 3d at 22.

## DISCUSSION

The Louisiana Products Liability Act is set forth in LSA-R.S. 9:2800.51, *et seq.*, and establishes the exclusive theories of liability of manufacturers for damages caused by their products. LSA-R.S. 9:2800.52. Specifically, the LPLA provides that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." LSA-

7

R.S. 9:2800.54(A). To recover under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product unreasonably dangerous; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. See LSA-R.S. 9:2800.54(A); Delahoussaye v. Boelter, 2019-0026 (La. App. 1st Cir. 11/15/19), 290 So. 3d 669, 674. If a plaintiff fails to establish any one of the above elements, his claim must fail and he cannot recover.

However, a manufacturer can be liable *only* if the damage arose from a reasonably anticipated use of the product, and if not, then a court need not reach the issue of whether the product is unreasonably dangerous. Johnson v. Black & Decker U.S., Inc., 29,996 (La. App. 2nd Cir. 10/31/97), 701 So. 2d 1360, 1365, writ denied, 97-2971 (La. 2/6/98), 709 So. 2d 741; see Butz v. Lynch, 99-1070 (La. App. 1st Cir. 6/23/00), 762 So. 2d 1214, 1217-18, writ denied, 2000-2660 (La. 11/17/00), 774 So. 2d 980 ("The availability of an alternative design is relevant only if the user was engaged in a 'reasonably anticipated use' of the product, for unless that threshold element is satisfied, a manufacturer does not have a legal duty to design its product to prevent such use."); see also Kelley v. Hanover Ins. Co., 98-506 (La. App. 5th Cir. 11/25/98), 722 So. 2d 1133, 1136, writ denied, 98-3168 (La. 2/12/99), 738 So. 2d 576 ("[B]efore reaching the question [of] whether a product is unreasonably dangerous..., a plaintiff must first meet the threshold requirement of [LSA-R.S. 9:2800.54(A)], which is that the injury arose from a 'reasonably anticipated use' of the product. It is only after such use is shown that the inquiry moves on to whether [a product is unreasonably dangerous].").

Once a claimant establishes that his or her damages arose from a reasonably anticipated use, the LPLA states that a product is unreasonably dangerous only if:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

LSA-R.S. 9:2800.54(B).

In its motion for summary judgment, Flowserve averred that there was an absence of factual support for two elements of Daigrepont's claim, i.e., that Zachary's actions in removing the pressure-containing bolts were a "reasonably anticipated use" of the valve; and that the valve was unreasonably dangerous. Flowserve contended that Daigrepont would be unable to establish that the valve was unreasonably dangerous in design because no alternative design existed at the time of manufacture, and Daigrepont would also be unable to establish that the valve was unreasonably dangerous due to lack of an adequate warning, where it was not required to warn Exxon given that Exxon was a "sophisticated user."

In support, Flowserve submitted: Daigrepont's and Wanner's petitions for damages; the deposition of Jonathan Zachary; the deposition of Flowserve's corporate representative, Roger Freeze; the deposition of A.J. McPhate, P.E.; the deposition of Leroy Blanchard; the deposition of Exxon's corporate representative, Byron Sevin; the deposition of Raphael Bojarczuk; the deposition of Peter Paul Howell, P.E.; Exxon's discovery responses; an affidavit and expert eport of M.S. Kalsi, P.E.; and partial discovery responses of Brock Services, LLC.

In opposition to the motion, Dairepont submitted: excerpts from the depositions of Randy Tadlock, Gregory McCormack, Jonathan Zachary, Roger Freeze, Byron Sevin, Raphael Bojarczuk, and Terry Blackard; configurations of

9

the plug valves in the Alky Unit; Flowserve memoranda regarding the plug valve's design change; photos of Flowserve's warning tag; and a print-out of 29 C.F.R. § 1910.119.

## Assignment of Error #1
### (Reasonably Anticipated Use)

On appeal, Daigrepont argues that Zachary was using the valve for "the exact purpose for which the valve was intended[,] ... [as] he removed bolts designed to be removable [and was] using the valve as a valve, which is all that is needed for a use to be reasonably anticipated." (Emphasis removed.)

A "reasonably anticipated use" of the product is defined as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LSA-R.S. 9:2800.53(7).[6] What constitutes a reasonably anticipated use is ascertained from the point of view of the manufacturer at the time of manufacture. Payne v. Gardner, 2010-2627 (La. 2/18/11), 56 So. 3d 229, 231. "Reasonably anticipated use" also effectively conveys the important message that "a manufacturer is not responsible for accounting for every conceivable foreseeable use" of its product. Dunne v. Wal-Mart Stores, Inc., 95-2047 (La. App. 1st Cir. 9/10/96), 679 So. 2d 1034, 1037.

The standard for determining a reasonably anticipated use is an objective one; i.e., an ordinary person in the same or similar circumstances. Marable v. Empire Truck Sales of Louisiana, LLC, 2016-0876 (La. App. 4th Cir. 6/23/17), 221 So. 3d 880, 893-94, writ denied, 2017-1469 (La. 11/13/17), 230 So. 3d 210. Thus, under the LPLA, a manufacturer is liable only for those uses it should reasonably expect of an ordinary consumer. See Kennedy, John, *A Primer on the Louisiana*

---

[6] This definition is narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonably foreseeable uses and misuses of the product." See Bloxom v. Bloxom, 512 So. 2d 839, 841 (La. 1987); Payne v. Gardner, 2010-2627 (La. 2/18/11), 56 So. 3d 229, 231.

*Products Liability Act*, 49 La. Law Rev. 565, 586 (1989); Marable, 221 So. 3d at 894.

Through its motion, Flowserve contends that all of Daigrepont's LPLA claims must fail as a matter of law because his damages do not arise from a reasonably anticipated use of the valve. Flowserve maintains that at the time of the valve's manufacture, there were no other instances of hazardous uses of the valve. In support, Flowserve relies on the testimony of its corporate representative, Roger Freeze, who testified that this type of valve was originally released in the "early" 1970s, and manufactured sometime between 1973-1981.

Flowserve further relies on Zachary's testimony to show that his actions could not be considered reasonably anticipated under the LPLA. Flowserve contends that because Zachary knew that this valve was connected to a line with pressurized isobutane running through it, that the Alky Unit contained plug valves with different configurations, and that he had never seen anyone remove the gearbox from this valve configuration the way he did it, his actions were not reasonable under the LPLA. Flowserve contends that it could not be reasonably anticipated that Zachary would work on the valve and unscrew pressure-containing bolts without first looking at what he was doing and assessing the equipment

Conversely, Daigrepont contends that Zachary was using the valve as a valve, to regulate the flow of a product through the valve's line, and that if Zachary was using the product in a way in which it was generally intended, his actions constitute a reasonably anticipated use under the LPLA, even if the use is inattentive or careless. Additionally, Daigrepont contends that Flowserve's knowledge of the possibility that an operator might inadvertently remove the pressure containing bolts on the valve is precisely what motivated Flowserve to redesign the valve. In support of this claim, Daigrepont points to two different memoranda issued by Flowserve, which stated that as early as 1976, Flowserve

11

began to redesign the valve in order to make it "more foolproof" and that, as of 1982, it had been a "long time goal" of Flowserve to change the gearbox mounting design of the valve.[7]  Daigrepont further relies on Freeze's testimony that the design change was initially implemented because "a hazard had been identified" that included "the possible inadvertent removal of the pressure-containing [bolts,]" and the design change "minimized" that possibility.  In his deposition, Freeze also agreed with counsel that "the unsafe part of the product was the reasonabl[y] anticipated use that an operator [would]... think he's removing the gear bracket bolts and also remove the pressure-containing bolts."

On review, we agree with Flowserve that once it made the requisite initial showing that, at the time of manufacture of the valve, it did not reasonably anticipate Zachary's use of the valve when he inadvertently removed the pressure-containing bolts, the burden then shifted to Daigrepont to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Flowserve was not entitled to judgment as a matter of law.  See LSA-C.C.P. art. 966(D)(1).  On *de novo* review, we conclude that Daigrepont produced such support to show that material issues of fact remain herein precluding summary judgment as a matter of law.

In particular, Daigrepont showed that, by Flowserve's own admission, the design change was implemented because a "hazard [was] identified" due to operators inadvertently removing the pressure-containing bolts when trying to remove the gearbox bracket.  Flowserve's memorandum stated that this design change began as early as 1976, and, according to Flowserve's own showing, the valve was manufactured sometime between 1973-1981.  Therefore, Daigrepont established that a genuine issue of material fact remains as to whether or not

_____

[7] The memoranda indicate that the notices were only sent out to "List 1B All Valve Distributors" and not to end-users or purchasers such as Exxon.

12

Flowserve should have reasonably anticipated this "hazard" at the time the valve was manufactured.

Thus, we find merit to Daigrepont's first assignment of error as genuine issues of material fact exist as to whether or not Zachary was engaged in a reasonably anticipated use of Flowserve's product at the time of the explosion and the ensuing injuries and damages allegedly sustained by Daigrepont. Accordingly, in light of the genuine issues of material fact remaining herein, Flowserve is not entitled to summary judgment dismissing Daigrepont's claims on the basis of an absence of factual support for a finding that Zachary's use of the valve at the time of the explosion was a reasonably anticipated use.

### Assignment of Error #4
### (Alternative Design)

In support of its motion for summary judgment, Flowserve alternatively contended that Daigrepont would be unable to establish that the valve was unreasonably dangerous due to a design defect, because Daigrepont cannot meet his burden in establishing a defective design claim as there is no evidence that an alternative design existed when the valve left Flowserve's control.

On appeal, Daigrepont contends that, though the LPLA requires that an alternative design "existed" at the time the product left the manufacturer's control, see LSA-R.S. 9:2800.56, that "does not mean [that it must have been] 'manufactured and in actual use,' nor does it mean the alternative design must have been feasible at the time of distribution[; i]t means the alternative design must have at least been conceived, to show the manufacturer had a realistic choice."

Louisiana Revised Statutes 9:2800.56 provides:

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

13

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

Flowserve relied on the affidavit and report of M.S. Kalsi, a mechanical engineer, to show that this type of mounting design was also used by other plug valve manufacturers when Flowserve manufactured this particular valve. Additionally, Flowserve relied on the testimony of A.J. McPhate, a mechanical engineer, to support its argument that the valve complied with industry standards at the time it was manufactured.

In opposition to the motion for summary judgment, Daigrepont pointed out that "Flowserve challenge[d] ... the defective design claim on only one basis[, by arguing] that the plaintiffs have not met the first requirement of [LSA-R.S.] 9:2800.5[6] – that, at the time the valve left Flowserve's control," an alternative design for the valve existed that was capable of preventing the damage. Daigrepont further points out that although Flowserve maintains that the valve was likely manufactured sometime between 1973 and 1981, its memoranda to distributors indicated that the design change began as early as 1976. Thus, Daigrepont contends that "there is an approximately five-year period (1976 to 1981) in which (1) the valve in question could have been manufactured *and* (2) Flowserve had already conceived of [the new design]."

Moreover, Daigrepont relied on the testimony of Gregory McCormack, who stated that he worked in refineries in the 1970s and saw valves where gearboxes were not attached to the pressure-containing parts. McCormack also testified that the only difference between this valve (referred to in this litigation as a "Configuration C" valve) and a similarly designed valve (a "Configuration D"

14

valve) is that the Configuration D valve has a pressure-containing nut in between the top cap and the gearbox bracket. Exxon's corporate representative, Byron Sevin, also testified that this was the only difference between the Configuration C and Configuration D valves and that the addition of the pressure-containing nuts "would be one option to secure [the] bracket without using pressure-containing bolts." Notably, McCormack testified that these pressure-containing nuts also existed in the 1970s and there was nothing technologically preventing the valve from being manufactured in this manner.

Additionally, we note that in Flowserve's corporate deposition, Freeze was asked whether Flowserve's method of mounting the gearbox to the valve was the only method in which it could be done. Freeze responded "No. That was our design to do it but, no, that's not the only way it could be done... There is alternative ways that others... may have done it."

Flowserve maintains that it demonstrated that Daigrepont would be unable to prove that an alternative design existed that was capable of preventing Daigrepont's damage at the time the valve left Flowserve's control and, therefore, the trial court correctly dismissed these claims against Flowserve. Flowserve argues that as a result of this showing, the burden shifted to Daigrepont to show factual support sufficient to establish a genuine issue of material fact or that Flowserve is not entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(D)(1).

Mindful that factual inferences reasonably drawn from the evidence must be construed in favor of the opponent to summary judgment and that any doubt must be resolved in favor of denying the motion for summary judgment, see Thompson, 244 So. 3d at 445, we conclude that on the showing made, whether an alternative design of the valve existed that was capable of preventing Daigrepont's damage is an outstanding issue of material fact, which must be submitted to the trier of fact

15

and cannot be resolved on summary judgment. Further, mindful of the fact that on summary judgment, courts cannot make credibility determinations, evaluate testimony, or weigh evidence, see Ladner v. REM Management., LLC, 2020-0601 (La. App. 1st Cir. 12/30/20), 318 So. 3d 897, 901, writ denied, 2021-00151 (La. 3/23/21), 313 So. 3d 271, we find that McCormack's testimony creates a genuine issue of material fact as to whether an alternative design existed at the time the valve left Flowserve's control. By Freeze's own admission alone, there were other methods by which the gearbox could be mounted to the valve. Moreover, although Flowserve argues in its motion that Kalsi found that the Configuration C design was also used by other manufacturers "at the time Flowserve manufactured" this valve, Kalsi's testimony does not identify or specify a time frame, but only describes how the gearbox was mounted to the valve and states, "This type of mounting design was used by other plug valve manufacturers."

Thus, we find that there is also merit to this assignment of error, as genuine issues of material fact exist as to whether an alternative design capable of preventing Daigrepont's damages existed at the time the product left Flowserve's control. Accordingly, Flowserve is likewise not entitled to summary judgment dismissing Daigrepont's claims with regard to the third element of an LPLA claim, namely, whether the valve was unreasonably dangerous in design pursuant to LSA-R.S. 9:2800.56.[8]

Having found on *de novo* review that genuine issues of material fact remain as to whether the valve in question was unreasonably dangerous in design, we conclude that Flowserve has failed to establish its entitlement to summary

---

[8] We note that under LSA-R.S. 9:2800.56, the existence of an alternative design capable of preventing the claimant's damage is only one part of the "unreasonably dangerous in design" claim, and that at trial, Daigrepont would be responsible for showing both elements of the claim. Flowserve's burden on the motion was to show the absence of factual support for one or more of the elements of Daigrepont's claim, see LSA-C.C.P. art. 966(D)(1). However, in its motion for summary judgment, Flowserve only briefed and presented argument pursuant to the alternative design element of the claim.

16

judgment on the basis that Daigrepont is unable to establish the "unreasonably dangerous product" element of his LPLA claim. Moreover, because we have 0found a question of fact remains unresolved herein as to whether the valve was unreasonably dangerous on the basis of design, we pretermit discussion of whether a genuine issue of material fact also remains as to whether the valve was unreasonably dangerous due to the lack of an adequate warning.

Finding issues of fact as to the "reasonably anticipated use" and "unreasonably dangerous product" elements of Daigrepont's LPLA claims against Flowserve are unresolved herein, we conclude that this matter was not ripe for summary judgment. Accordingly, because Flowserve has failed to prove its entitlement to summary judgment dismissing Daigrepont's LPLA claims, the judgment dismissing those claims must be hereby reversed.

## CONCLUSION

For the above and foregoing reasons, the October 18, 2019 judgment of the trial court, granting summary judgment in favor of Flowserve US, Inc. and dismissing Derrick Daigrepont's claims against Flowserve US, Inc., with prejudice, is hereby reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed to defendant/appellee, Flowserve US, Inc.

**REVERSED AND REMANDED.**