FRUGÉ, Judge.
This is an action for personal injuries, medical expenses, and property damage rising out of a rear-end collision involving two vehicles on an open highway. A jury verdict awarded Mrs. Gertie Royer $12,000 for general damages, and her husband $3,250 for special damages. The defendant has appealed from that verdict. We amend and affirm.
The accident occurred at approximately 6:15 p. m. during the month of December, 1968, approximately three miles north of the Houston River on Highway 27, which runs from Sulphur to DeQuincy. Mrs. Gertie Royer was proceeding in a northerly direction in her 1960 pick-up shortly before the accident. An accident had already occurred and the highway ahead was obstructed by a vehicle. She came to a halt in the north-bound lane. The defendant, Ralph Clark, also was proceeding northward along the same highway and came upon the Royer vehicle and failed to stop in sufficient time to avoid collision. Mrs. Royer was injured and considerable damage was done to the Royer vehicle.
The accident occurred after light had faded and during the dark hours. The highway was wet and there may have been some misting rain. It had been raining shortly before the accident occurred, but was not raining at the time of the collision. There was no fog on the highway. A two-vehicle accident had occurred some minutes before when a south-bound vehicle had strayed into the other lane. The south-bound vehicle had gone off the highway into the ditch on the west side of the highway. It was pointing south. The north-bound automobile came to a rest diagonally across the north-bound lane pointing in a northwesterly direction with the lights pointing out across a field and it was thoroughly blocking off most of the highway.
Mrs. Royer was the first one to come upon the accident. She realized well before she arrived at the scene that something unusual had taken place and for that reason had slowed down and came to a stop approximately some 50 yards from the accident. Her engine continued to run after she stopped and her lights were on the whole time. She did not move closer to the other vehicles nor attempt to pass for fear that someone may have fallen out into the grass. Also, at that point along the highway, the shoulders were very narrow and were softened by the rain. These conditions kept her from passing the wrecked vehicles. That was the position she was in when Clark approached from the South.
Mrs. Royer saw Clark approaching and for fear that he would not see that an accident had occurred, started flashing her brake lights by pumping on her brakes. She said she pumped her brakes several times in an attempt to warn the approaching vehicle to stop.
Clark testified that he was not going but about 50 miles an hour, and he came upon the Royer truck and did not realize that it was stopped nor did he see any lights. At that point in this particular highway, the highway is straight and level and the closest curve in the highway in the direction that both Mrs. Royer and Mr. Clark approached was over of a mile away. The extensive damage to both vehicles indicates that Clark was going much faster than he should have been. He left little skid marks from his tires. These marks were only about 25 feet, and it is apparent that he had applied his brakes only briefly before the collision. Clark contends that there were no lights on the Royer vehicle. His actual words were: “I saw no lights”.
The officer that investigated the accident examined the Royer truck approximately 1 and hours to 2 hours after the accident while it was parked at her house a couple of miles away and found the rear brake lights to be in operative condition even after the accident. The only damage after the accident was that one of the red *118 lenses on the lights had been broken out, but the bulb was still in the holder and would still work. Mrs Royer testified that the lights were in proper order before the accident.
We are of the opinion that Clark was negligent and that it was his negligence that caused the accident for failure to keep a proper lookout and keep his vehicle under control. There is ample evidence that had he been keeping a proper lookout, he would have seen Mrs. Royer’s lights on her truck even without her having flashed them. There is also evidence that the car involved in the previous accident was west of the south-bound lane and in the ditch with its lights pointing south. He should have seen these lights. They were on the whole time. Also, the lights of the northbound auto were pointed through a field to the northwest, and he should have been able to see these lights, as well as realize that there was some emergency ahead. He testified that he saw the lights of the second vehicle but thought that it was a vehicle waiting at an intersection. That vehicle was actually directly ahead of him in the highway and not off to the side. If he had not hit Mrs. Royer, in all probability, he would have hit the other vehicle. The extent of damage to both the Royer vehicle and his vehicle clearly indicates that he was in all probability driving at an excessive rate of speed, and it was this that prevented him from stopping in sufficient time to avoid the collision.
Much has been argued by appellant that Mrs. Royer was violating LSA-R.S. 32:141 which in brief, provides that vehicles must be removed from the highway. We do not think that in this situation there was a violation. It would not have been practical for her to extricate her vehicle from the highway in this instance. Mrs. Royer was the first to arrive at the accident and had been there only two minutes before Clark arrived. The highway was already obstructed by the previous accident. The shoulder was too unsafe for her to travel upon.
Appellant contends that the jury abused its discretion in this case by awarding Mrs. Royer $12,000. A trier of fact has much discretion in which to assess general damages and that discretion will not be disturbed in absence of clear abuse. LSA-C.C. Article 1934(3); Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Similar cases are only relevant to determine whether that “much discretion” has been abused. Other considerations must also be observed in reaching an award.
Mrs. Royer hit her head against a gunrack in her track and sustained an injury to her head and neck which caused her much pain and suffering. Mrs. Royer, though she did not begin to experience this pain shortly after the accident, did experience considerable numbness in her neck until the pain became manifest approximately on the third day. She testified that the hematoma on her head was very large and she could hardly cover it with her hand. It was approximately the size of her hand.
Dr. Smith, who was Mrs. Royer’s family physician, saw her shortly after the accident at the West Calcasieu-Cameron Hospital and diagnosed her as having pain in her lower back and a superficial laceration over the back of her head which did not require suturing. This particular laceration was beginning to develop a hematoma. She was also extremely emotionally upset. He recommended that she return home and apply ice packs to that portion of her head. He suggested that she return the next day for x-rays. This was done and the x-rays did not show any damage. Mrs. Royer was put on tranquilizers and muscle relaxers. Approximately the third day, Mrs. Royer began to experience considerable pain in her neck and returned to Dr. Smith. On the 2nd of January, he put her in the hospital and she stayed there through the 10th of January under conservative treatment. After this hospitaliza *119 tion, Dr. Smith diagnosed her case as acute cervical strain and acute low back strain.
Mrs. Royer remained under the care of Dr. Smith for approximately five months. During this time, she underwent regular physical therapy and took various medicines. Dr. Smith saw her last on the 15th of May, 1969, at which time he told her he thought most of her problem was anxiety or depression. Shortly thereafter, Mrs. Royer went to see another physician.
In May, 1969, Mrs. Royer went to see Dr. Hatchette, an orthopedic surgeon, and remained under his care from that time until the time of the trial. Dr. Hatchette found symptoms of a straining injury of the cervical spine area and prescribed a cervical collar and various other medications and physical therapy. This proceeded after this initial examination until the time of the trial and during this period she was either treated by him or received therapy on 23 occasions. Mrs. Royer’s condition did not improve substantially, but at one time deteriorated to such extent that she had to be hospitalized by Dr. Hatchette in Lake Charles Memorial from August 1 through August 8, 1969, during which time she was experiencing great pain.
In February, 1970, Dr. Hatchette decided to make certain tests and determine whether Mrs. Royer was suffering from neurological complications. He sent her to the Baptist Hospital in Beaumont, Texas, to undergo the necessary examination by certain physicians that he recommended. Both Dr. Kubala, a neurosurgeon, and Dr. Starr examined Mrs. Royer and decided that a myelogram was necessary and advisable and performed this particular test on Mrs. Royer. The test resulted in the negative and Mrs. Royer was discharged from that hospital.
Mrs. Royer was also seen on June 9, September 15, 1969, and April 21, 1970, by Dr. Morin, who also indicated that Mrs. Royer had suffered a cervical strain and that Mrs. Royer was experiencing difficulty with her neck as a result to the injury.
The last examination conducted by Dr. Hatchette was on the 9th of November, 1970, shortly before the trial and his testimony was that she had improved considerably since the first examination and should not have serious trouble in the future with her injury.
The evidence overall reveals that Mrs. Royer did sustain injuries and that these injuries were very painful and required a considerable amount of medical attention. But, we do not think that the record adequately supports the award of $12,000.00. Also, we think that the award is so out of line with other cases that it must be concluded that the jury abused its “much discretion”. An adequate award in this case is $5,000.00.[1]
An award of $3,250.00 was made to Willis Royer for special damages. We do not find proof for this amount. The actual proof in the record of special damage only totals $1,955.82. We think that the special damages must be reduced from $3,250.00 to $1,955.82.
For the foregoing reasons, the award to the plaintiff, Gertie R. Royer, is reduced to $5,000.00, and the award to the plaintiff, Willis Royer, is reduced to $1,955.82; and, as thus amended, the judgment is affirmed in all other respects. Appellant to pay costs.
Amended and affirmed.

. The author believes that the court below did not abuse its “much discretion” in making the award of $12,000.00. The award in this judgment is now grossly inadequate, but in the interest of dispatch of justice, the writer yields to the greater pressure of the majority of this court. Assuming the position of dissenter on this point, I repeat a quotation recently used by Justice Sanders in Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971), “[A]n appellate court should not fix the amount of the award solely to maintain uniformity of awards, thus ignoring the prerogatives of the trial judge or jury in assessing awards. * * * ”.