REDMANN, Judge.
Defendants (a truck driver, his employer and their insurer) appeal from a judgment holding them liable for injuries suffered by original plaintiff’s then minor son (now a major and substituted plaintiff) as a passenger in a New Orleans Fire Department rescue unit which rearended defendants’ truck. The rescue unit driver also appeals from the judgment which, on defendants’ third party demand for contribution from him (and others subsequently dismissed), granted defendants judgment over for the entire amount of the judgment on the main demand.
Defendants’ truck (tractor and trailer) was travelling at or before dawn on an undivided, four-lane highway in New Orleans’ outskirts, towards the Mississippi gulf coast. The absence of daylight was aggravated by the presence of patches of heavy fog. Defendant driver saw a man waving him down and saying something. *601 The driver veered into this left traffic lane in a fog patch, anticipating an accident ahead and hoping to be able to pass it in the left lane. In fact he stopped in the left lane; he testified he did so because 25 or 30' ahead an accident involving two trucks and a car blocked both lanes. He further testified that after stopping he could not back up to quit his stopped position in a traffic lane because of admittedly very poor visibility, and that he therefore got out of his truck and was getting flares from under its seat when he heard the rescue unit’s siren and the unit ran into his rear end.
Plaintiff presented the testimony of another fireman (who arrived on the scene about five minutes later after plaintiff radioed for assistance) that the first accident, involving one truck and a car (“if I remember correctly * * * I wasn’t involved [sic] in that one”) did not at that time obstruct the left lane. ,
The trial judge’s reasons do not discuss this aspect of the case, but he does recite defendant driver’s moving into the left lane hoping to pass the accident; thus he apparently believed defendant driver in this respect. If, however, such was his motivation in moving left, it seems highly probable he also told the truth in explaining why he instead stopped and was getting out flares, viz. the left lane was also blocked. Had it not been blocked, he would have kept going past the earlier accident.
The apparently contrary testimony of the after-arriving fireman does not necessarily contradict defendant driver. Plaintiff fireman and his driver saw a policeman by defendants’ truck prior to their collision. Perhaps the police had completed their investigation of the earlier accident and the involved truck in the left lane moved on, leaving only one truck and the car, between the time of our collision and the arrival of the later fireman.
The trial judge thus reasoned defendant driver was negligent: “Mr. Smith was waived down and did not stop his truck in the right hand lane. Instead he veered to the left, continued forward and stopped on the highway in the left hand lane. Further, the siren of the emergency unit was blaring and Mr. Smith should have known that he was under an obligation to stay out of the fast, left hand lane.”
There is no evidence from which the trial judge could have concluded that Smith should have heard the siren at the time he moved into the left lane and came to a stop, several seconds before the emergency unit came upon the scene. The unit may have been out of hearing distance (at least to the driver of a truck with engine running) when Smith moved into the left lane. Thus it cannot be said Smith breached the duty to yield to a siren-blowing emergency vehicle.
Stopping on the highway (in left or right lane) violates R.S. 32:141 subd. (A) unless practically unavoidable. But Smith’s explanation of his stopping shows he had to stop because he could no longer go forward in right or left lane due to an accident. He could not see to back his truck up, and the limited space between him and earlier accident, we conclude, would not have allowed him to get off the highway by going forward and to his right. (The possibility of entering the oncoming traffic lanes to his left in the heavy fog would have been a cure more dangerous than his first predicament.) We find no statutory breach here. See Roger v. Travelers Indem. Co., 251 So.2d 116 (La.App.1971).
Nor can we say Smith behaved unreasonably in moving into the left lane in hopes of passing the possible accident he anticipated from being waved down. He had no obligation to stop his truck at all because someone (not a law enforcement officer) waved at him, and he certainly had no obligation to stay in the right lane. We see no obligation here except that of behaving with reasonable prudence, and we find nothing imprudent in Smith’s moving to the left lane and slowing down.
We note plaintiff’s contention that Smith was negligent in driving 25 to 30 mph *602 towards a fog patch, and that this negligence caused him to veer to the left because he feared he could not stop in the right lane. Even assuming Smith’s speed was negligence, this argument is unsupported by the record. The only pertinent evidence was Smith’s testimony (accepted by the trial judge in his reasons) that he moved left hoping to be able to pass.
While there was conflicting testimony concerning whether defendants’ truck had lights or reflectors on its rear, the trial judge did not cite absence of lights as negligence. We think more probable defendant driver’s testimony, but the lights’ presence or absence seems wholly immaterial in view of the thick fog.
We are unable to find evidence of statutory violation or other fault by Smith which caused plaintiff’s injury.
The judgment appealed from is reversed and all demands are dismissed at plaintiff’s cost.
Reversed.