STEWART, J.
| plaintiffs, Frederick and Patricia Bates, seek reversal of the summary judgment granted in favor of defendants, Jerry N. Amburgey and his insurer, Home State County Mutual Insurance Company (“Home State”). The judgment dismissed the Bates’s claims for damages resulting from a rear-end collision. For the follow *816 ing reasons, we affirm the trial court’s judgment.
FACTS
On August 8, 2004, at about 3:00 p.m. on a clear day, a 2002 GMC pickup truck driven by Patricia Bates collided into the rear of a car trailer being towed by Jerry Amburgey westbound along Interstate 20 (“1-20”). Amburgey was driving a 1995 Chevrolet motor home with the car trailer attached behind. Amburgey had come to a stop on the interstate because of traffic congestion resulting from a prior accident. A tractor/trailer owned by R.G. Darby Co., and driven by William S. Prater had collided with a motorcycle owned and operated by James E. Brown.
Bates and her husband filed an action for damages naming Amburgey and Home State as defendants, along with James E. Brown, William S. Prater, R.G. Darby Co., and its insurer, Zurich American Insurance Company.
Amburgey and Home State filed a motion for summary judgment alleging that no genuine issue of material fact existed and that Bates would be unable to present any evidence to rebut the presumption of negligence imposed on a following motorist by La. R.S. 32:81. In support of the motion, defendants attached the deposition testimony of Patricia Bates and [¡.that of Johnny Scott Brown, the Louisiana State Trooper who investigated the accident. The accident report prepared by Brown was attached as an exhibit to his deposition.
Bates testified in her deposition that the accident occurred on a clear, sunny day as she was returning to her home in Choud-rant from her daughter’s home in Monroe. She was traveling in the left-hand westbound lane of 1-20 at about 70 miles per hour when, according to her account of the accident, the following happened:
I was coming down a hill. This RV looked like he was going, and I can’t state how far ahead he was of me. And it looked like he was steadily going, because he had no lights on. And then when I realized that he was stopped, I put on my brakes, but then it was too late, so I tried to dodge his car, and I hit the left part at the taillight.
Despite repeated questioning, Bates could not give any estimation of how far in front of her the motor home was either when she first saw it or when she first applied her brakes. She also stated that the motor home blocked her view and that she did not recall seeing any other vehicle stopped on the road. She could not say where other vehicles were in relation to her either before or at the time of the accident. After impact, her vehicle rolled over several times before coming to rest on the left side of the roadway.
Trooper Brown’s deposition indicates that he had very little independent recollection of his investigation, but he was able to refresh his memory from a copy of the accident report prepared by him. According to the report and his testimony, the accident occurred at about “Milepost 104.9” of 1-20 on a straight-level part of the roadway. He indicated there |3was a distance of about three hundred to four hundred yards from the site of the accident back to the crest of the hill. Brown did not find any skid marks, but he did find twelve feet of “yaw marks” on the road. He described the “yaw marks” as evidencing a “sharp turning motion with the wheel” that “started on the left edge of the westbound lane and traveled onto the left shoulder and then back into the left lane.” Brown observed nothing about the area that would have obscured Bates’s vision, nor did he observe any defects in the road or the vehicles which would have contributed to causing the accident. Brown *817 observed that Amburgey’s right brake light on both the motor home and trailer displayed a steady red light and the left brake light of both was flashing. He explained that he likely cheeked the lights as a routine part of his investigation of the rear-end collision. Brown concluded that Bates had been inattentive and had failed to recognize that Amburgey’s vehicle was stopped for the traffic congestion. He issued her a citation for careless operation of a motor vehicle.
In opposition to the motion for summary judgment, Bates filed her own affidavit in which she attested that she came upon a vehicle stopped in the inside lane of 1-20 with neither its brake nor caution lights activated.
The trial court granted the motion for summary judgment and dismissed the plaintiffs’ claims against Amburgey and Home State. This appeal followed.
DISCUSSION
Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any |4affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Patton v. Strogen, 39,829 (La.App.2d Cir.8/17/05), 908 So.2d 1282, writ denied, 2005-2397 (La.3/17/06), 925 So.2d 548. On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. If the adverse party then fails to produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C)(2).
Summary judgments are reviewed on appeal de novo. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate, whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Magnon, supra. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Lemann v. Essen Lane Daiquiris, Inc., 2005-1095 (La.3/10/06), 923 So.2d 627.
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of |sLouisiana Civil Code article 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant failed to conform his conduct to the appropriate standard of care; (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) actual damages. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270. Duty is a question of law. Beck v. Schrum, 41,647 (La.App.2d Cir.11/01/06), 942 So.2d 669. The inquiry is whether a plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his or her claim. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606.
*818 In moving for summary judgment, the defendants focused their arguments on Bates’ duty as a following motorist and the evidence suggesting that she breached that duty by failing to maintain a proper lookout. In opposing the motion, Bates asserted the Amburgey was in violation of La. R.S. 32:141(A) for stopping on the roadway.
The duty of a following motorist is governed by La. R.S. 32:81(A), which provides:
A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
The following motorist in a rear-end collision is presumed to be at fault. Taylor v. Voigtlander, 36,670 (La.App.2d Cir.12/11/02), 833 So.2d 1204; Wheelis v. CGU Ins., 35,230 (La.App.2d Cir.12/7/01), 803 So.2d 365. To | ¿rebut the presumption and avoid liability, the following motorist must prove that he had his vehicle under control, that he closely observed the lead vehicle, and that he followed it at a safe distance under the circumstances. Id. Alternatively, the following motorist must show that the lead driver negligently created a hazard which could not reasonably be avoided. Id.
With regard to vehicles stopped on a roadway, La. R.S. 32:141 provides in relevant part:
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
In Royer v. Travelers Indemnity Co., 251 So.2d 116 (La.App. 3rd Cir.1971), the court found that La. R.S. 32:141 did not require a driver who first came upon the scene of an accident that obstructed the highway to remove her vehicle from the road. Mrs. Royer was the first at the accident scene and had been there only two minutes when her vehicle was hit from behind. The accident occurred on a dark, misty evening, and Mrs. Royer tried to alert the driver approaching from the rear by pumping her brake lights. The investigating officer examined Mrs. Royer’s vehicle over an hour after the accident and found her lights to be operative. The driver who hit her claimed he saw no lights, but the court found that he failed to keep a proper lookout. Though the facts of Roy-er, supra, and this matter somewhat differ, |7the same conclusion applies here where Amburgey was stopped for traffic backed-up because of a prior accident.
We find La. R.S. 31:141 to be inapplicable to this matter. We have found no case wherein this provision was applied to a vehicle stopped on an interstate because of congested traffic caused by a prior accident. In such instances, it would be impracticable for the lead motorist to do anything other than come to a stop behind the traffic ahead of him.
We do not find that Bates’ claim that she did not see any lights on the Ambur-gey vehicle creates a genuine issue of material fact for trial. Trooper Brown found the lights on the Amburgey vehicle to be operative post-accident. Moreover, Bates did not suddenly come upon a stopped vehicle as claimed in her affidavit. Rath *819 er, the exhibits in support of the motion for summary judgment establish that traffic was congested and coming to a stop in both westbound lanes of 1-20 due to a prior accident. Bates testified in her deposition that she was looking ahead at the motor home as she came down a hill but failed to reahze that it was stopping. She could not recall any vehicles around her and apparently failed to notice traffic slowing to a stop in the adjacent lane as well. Her testimony establishes that she failed to keep a proper lookout, failed to recognize the slowing traffic, and obviously failed to follow at a safe distance under the circumstances. Closing in on the vehicle ahead of her should have provided warning that the traffic was slowing down before Bates had to hit the brakes at the last moment to try to avoid a collision.
IsBates has failed to come forward with any evidence to show that she will be able to overcome the presumption of negligence on the following motorist. She has also failed to come forward with any evidence to show that she will be able to establish any negligence on the part of Amburgey. Summary judgment was properly granted.
CONCLUSION
For the reasons set forth in this opinion, we affirm the trial court’s judgment. Costs are assessed to the appellant, Bates.
AFFIRMED.