# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

* * * * * * *

## 2019 CA 0874

### MARY JENKINS, DONNA JENKINS, AND DOMINIQUE JENKINS

### VERSUS

### NEFTALI LUEVANO HERNANDEZ, AG LOGISTICS, LLC, NATIONAL FIRE AND MARINE INSURANCE COMPANY, ACCORD INSURANCE COMPANY, CORA-TEXAS MFG. CO, INC., CORA TEXAS MANUFACTURING COMPANY, LLC, KENDELL TAYLOR, SHELTER MUTUAL INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY[,] ABC INSURANCE COMPANY, AND XYZ INSURANCE COMPANY

JUDGMENT RENDERED:    JUN 0 3 2020

* * * * * * *

Appealed from the
Eighteenth Judicial District Court
In and for the Parish of Iberville • State of Louisiana
Docket Number 74348 • Division A

The Honorable J. Kevin Kimball, Judge Presiding

* * * * * * *

| | |
|---|---|
| Michael C. Palmintier<br>Jonathan E. Mitchell<br>Baton Rouge, Louisiana | ATTORNEYS FOR APPELLANTS<br>PLAINTIFFS—Mary Jenkins, Donna Jenkins, and Dominique Jenkins |
| Howard L. Murphy<br>Darrell K. Cherry<br>John B. Esnard, III<br>Pierce C. Azuma<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEES<br>DEFENDANTS—Neftali Luevano Hernandez; AG Logistics, L.L.C.; Cora-Texas Mfg Co., Inc.; and Cora Texas Manufacturing Company, L.L.C. |
| Samuel M. Rosamond, III<br>Adam D. deMahy<br>Travis L. Simmons<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEES<br>DEFENDANTS—National Fire and Marine Insurance Company |

* * * * * * *

**BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**WELCH, J.**

In this wrongful death and survival action, the plaintiffs—Mary Jenkins, Donna Jenkins, and Dominique Jenkins—appeal from a judgment of the trial court granting summary judgments in favor of the defendants—Neftali Luevano Hernandez; AG Logistics, L.L.C. ("AG"); Cora-Texas Mfg Co., Inc. and Cora Texas Manufacturing Company, L.L.C. (collectively, "Cora Texas"); and National Fire and Marine Insurance Company ("National Fire"). For the reasons that follow, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

This wrongful death and survival action arises out of multiple vehicle collisions that occurred on December 17, 2013, beginning at approximately 4:30 a.m., on Louisiana Highway 1, about 1.10 miles north of Louisiana Highway 405 in Ascension Parish, Louisiana. The string of collisions began when Triana B. Albert, who was operating her vehicle in the southbound lane of Highway 1, stopped her vehicle in the middle of the two-lane highway after she drove into what witnesses described as a zero-visibility "white out" fog. The following driver, Juan Carlos Vela Torres, who was operating a 2014 Freightliner tractor truck hauling an empty sugar cane trailer, stopped behind her. Moments after Torres stopped, a 2008 Chevrolet Equinox operated by Coy J. Leonard rear-ended Torres' trailer. Seconds later, a 2006 Hyundai Accent operated by Sherry E. Edwards rear-ended Leonard's vehicle.

A 2012 Volvo tractor truck hauling an empty sugar cane trailer operated by Michael D. Gouthier narrowly avoided colliding with Edwards' vehicle by steering partially onto the shoulder of the highway, stopping his tractor truck, and engaging his hazard lights. Thereafter, a 2014 Freightliner tractor truck hauling an empty sugar cane trailer that was operated by Neftali Luevano Hernandez came to a complete stop behind Gouthier. Hernandez engaged his emergency flashers and

2

waited for the Gouthier tractor truck to proceed. Approximately two minutes later, Hernandez felt an impact from behind as Donald Jenkins struck Hernandez's trailer driving a 1991 Acura Integra. Jenkins tragically suffered fatal injuries and died at the scene of the crash.

Jenkins' wife, Mary Jenkins, and two adult children, Donna Jenkins and Dominique Jenkins, filed a petition for damages on December 17, 2014, against multiple defendants,[1] seeking wrongful death and survival damages as a result of Jenkins' death.[2] Particularly as to Hernandez, the plaintiffs asserted that the accident, injuries, and death of Jenkins were caused, in whole or in part, by the negligence of Hernandez in: making an improper stop and creating an illegal obstruction of a public highway in violation of La. R.S. 32:141; failing to warn oncoming traffic of his obstruction of the lane of travel; failing to use proper lighting and/or warning signals; failing to properly maintain his vehicle under the driving conditions existing at the time of the accident; and failing generally to maintain the standard of care required in the above-described driving conditions.

Thereafter, on June 6, 2018, Hernandez, AG, and Cora Texas filed a motion for summary judgment, asserting that undisputed material facts established that Hernandez owed no duty to Jenkins; the actions of the defendants did not cause the

---

[1] The plaintiffs sued Hernandez and his insurer, XYZ Insurance Company, alleging that he was in the course and scope of his employment at the time of the accident. Accordingly, the plaintiffs named Hernandez's alleged employers and their insurers as defendants—AG Logistics, LLC, insured by National Fire and Marine Insurance Company and/or Accord Insurance Company; and Cora-Texas Mfg. Co., Inc. and Cora Texas Manufacturing Company, LLC (collectively, "Cora Texas"), insured by ABC Insurance Company.

The plaintiffs also named Kendell Taylor (a following driver involved in multiple collisions) and his insurer, Shelter Mutual Insurance Company, as defendants. On joint motion of the plaintiffs, Taylor, and Shelter, the trial court dismissed all of the plaintiffs' claims against Taylor and Shelter, with prejudice, in a judgment signed on August 17, 2018.

The plaintiffs also sued Jenkins' liability and uninsured/underinsured carrier, Allstate Insurance Company. On motion of the plaintiffs, the trial court dismissed all of the plaintiffs' claims against Allstate, without prejudice, in a judgment signed on July 15, 2015.

[2] The plaintiffs also filed a first amended and supplemental petition for damages on April 15, 2019, naming as additional defendants Harang Sugars, L.L.C.; Lemann & Thibaut, Inc.; Harang Investments, L.L.C.; B. & W. Farms, Inc.; and Harang Family Land, LLC. Plaintiffs' claims against those defendants are not at issue in this appeal.

accident, injury, and damages alleged by the plaintiffs; or alternatively, that the accident arose from a sudden emergency thereby precluding any allocation of fault to the defendants; and finally, that Cora Texas did not employ or direct Hernandez and could not be vicariously liable for any fault allocated to Hernandez; therefore, summary judgment was proper.

On June 7, 2018, National Fire filed a motion for summary judgment corresponding to the motion filed by Hernandez, AG, and Cora Texas. National Fire alleged that as the liability insurer of Hernandez's employer, AG, it was sued under the direct action statute, La. R.S. 22:1269. Accordingly, National Fire claimed entitlement to dismissal from the suit should the plaintiffs' claims against Hernandez, AG, and Cora Texas be dismissed on summary judgment.[3]

The plaintiffs opposed the motions for summary judgment, arguing that Hernandez failed to comply with the duty set forth in La. R.S. 32:141 to move his stopped tractor truck off of the roadway when he had the opportunity to pull off onto the shoulder of the highway, thereby creating genuine issues of material fact, which precluded summary judgment in the defendants' favor.[4]

Following a hearing on March 7, 2019, the trial court granted the defendants' summary judgments. On March, 26, 2019, the trial court signed a judgment in accordance with its ruling, granting summary judgment in favor of Hernandez, AG, Cora Texas, and National Fire, and dismissing all of the plaintiffs' claims against those defendants, with prejudice.

The plaintiffs now appeal, assigning three errors to the trial court's judgment: legal error as to the holding that Hernandez had no duty under La. R.S. 32:141 to pull over to the side of the road because he had the opportunity to do so

---

[3] National Fire adopted the statement of uncontested facts filed by Hernandez, AG, and Cora Texas.

[4] The plaintiffs did not contest the entry of summary judgment in favor of Cora Texas on the issue of its employment relationship to Hernandez and AG. Accordingly, we pretermit discussion of that issue.

and was stopped for more than a minute; the trial court improperly ruled on the element of breach despite the defendants not having presented that issue to the court on summary judgment; and the trial court improperly resolved disputed questions of fact in concluding that Hernandez acted reasonably.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet this burden by filing supporting documentary evidence consisting of pleadings, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry the mover's burden. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material facts issues. **Crockerham v. Louisiana Med. Mut. Ins. Co.**, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So. 3d 604, 608.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); **Babin v.**

5

**Winn-Dixie Louisiana. Inc.**, 2000-0078 (La. 6/30/00), 764 So. 2d 37, 39; **Hayes v. Autin**, 96-287 (La. App. 3rd Cir. 12/26/96), 685 So. 2d 691, 695, writ denied, 97-0281 (La. 3/14/97), 690 So. 2d 41. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); **Celotex Corp. v. Catrett**, 477 U.S. 317, 332, 106 S. Ct. 2548, 2557, 91 L. Ed. 2d 265 (1986); see also La. C.C.P. art. 966, Comments--2015, Comment (j). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. **Babin**, 764 So. 2d at 40. See also **Celotex Corp.**, 477 U.S. at 326, 106 S.Ct. at 2554.

Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Daniels v. USAgencies Cas. Ins. Co.**, 2011-1357 (La. App. 1st Cir. 5/3/12), 92 So. 3d 1049, 1055. Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pac. Consumer Operations, LLC**, 255 So. 3d at 22.

6

## LAW AND DISCUSSION

The plaintiffs' claims in this case are based upon the defendants' alleged negligence. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles as set forth in the Civil Code. **Brewer v. J.B. Hunt Transport, Inc.**, 2009-1408 (La. 3/16/10), 35 So.3d 230, 240. In order for liability to attach under the duty-risk analysis, the plaintiff must prove the following separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). **Roberts v. Rudzis**, 2013-0538 (La. App. 1st Cir. 5/28/14), 146 So. 3d 602, 608-09, writ denied, 2014-1369 (La. 10/3/14), 149 So. 3d 797. A negative answer to any of the elements of the duty-risk analysis prompts a no-liability determination. **Daniels**, 92 So. 3d at 1055. In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. **Hanks v. Entergy Corp.**, 2006-477 (La. 12/18/06), 944 So. 2d 564, 578.

In their petition for damages, the plaintiffs alleged that Hernandez breached the following duties: making an improper stop and creating an illegal obstruction of a public highway in violation of La. R.S. 32:141; failed to warn oncoming traffic of his obstruction of the lane of travel; failed to use proper lighting and/or warning signals; failed to properly maintain his vehicle under the driving conditions existing at the time of the accident; and failed generally to maintain the standard of care required in the above-described driving conditions.

7

Duty is a question of law and is a threshold issue in any negligence action. Simply put, the inquiry is whether a plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support the claim. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. **Daniels**, 92 So. 3d at 1055.

As the movers, the defendants had the burden of proof on summary judgment; however, because they would not bear the burden of proof at trial, they were required to point out to the trial court the absence of factual support for one or more elements of the plaintiffs' negligence claim. See La. C.C.P. art. 966(D)(1). The defendants pointed out the absence of factual support for the duty element—that Hernandez owed no duty to Jenkins as a stopped motorist to move his vehicle from the roadway under La. R.S. 32:141.

The defendants argued that La. R.S. 32:141 does not apply to a motorist who does not obstruct the free flow of traffic, nor to situations when it is not "practicable" for the motorist to move his vehicle from the roadway. Specifically, the defendants averred that La. R.S. 32:141 has no application to a motorist such as Hernandez who is forced to stop his vehicle because the free flow of traffic had already been interrupted due to a traffic stoppage on account of congestion, construction, or as in this case, a vehicular accident. The defendants further argued that Hernandez did not have the opportunity to move his tractor truck onto the shoulder of the highway or employ external vehicular warning devices, such as reflective triangles or cones to warn oncoming traffic of his obstruction of the lane of travel because his vehicle was impacted only two minutes after he came to a stop.

It is well settled that when visibility is impaired by smoke, fog, or other unfavorable atmospheric conditions, a motorist must exercise care in the operation of his vehicle commensurate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety. **Campbell v. Am. Home Assur. Co.**, 258 So. 2d 81, 83 (La. 1972). Whether a motorist's conduct falls below the objective standard for his self-protection is a question of fact, depending upon all the circumstances. Among the factors to be considered are the extent of visibility, nature of the roadway, and congestion of traffic. **Campbell**, 258 So. 2d at 84.

Louisiana Revised Statutes 32:141, titled "Stopping, standing, or parking outside business or residence districts," provides as follows:

> A. Upon any highway outside of a business or residence district, **no person shall stop, park, or leave standing any vehicle**, whether attended or unattended, upon the paved or main traveled part of the highway **when it is practicable to stop, park or so leave such vehicle off such part of said highway,** but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.

> B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.

> C. The **driver of any vehicle left parked**, attended or unattended, on any highway, between sunset and sunrise, **shall display appropriate signal lights thereon,** sufficient to warn approaching traffic of its presence. If the vehicle is not removed from the highway within twenty-four hours, the provisions of R.S. 32:473.1(B) shall apply.

9

D. In the event of a motor vehicle accident, if the driver is not prevented by injury and the vehicle is not disabled by the accident, or the accident has not resulted in serious injury or death of any person, the driver shall remove the vehicle from the travel lane of the highway to the nearest safe shoulder. Compliance with the provisions of this Subsection shall in no way be interpreted as a violation of requirements to remain at the scene of an accident as provided for in the Highway Regulatory Act or by R.S. 32:414. [Emphasis added.]

This statutory duty is designed to prevent the risk of confused or inattentive drivers colliding with such obstructions. See **Hebert v. BellSouth Telecommunications, Inc.**, 2001-00223 (La. App. 3rd Cir. 6/6/01), 787 So. 2d 614, 619, writ denied, 2001-1943 (La. 10/26/01), 799 So. 2d 1145.

The term "park" as used in Section A of La. R.S. 32:141 does not comprehend or include a mere temporary or momentary stoppage, but rather connotes a stoppage with the intent of permitting the vehicle to remain standing for an appreciable length of time. **Lawrence v. McKenzie**, 2017-1131 (La. App. 1st Cir. 2/21/18), 2018 WL 990304, at *6 (unpublished). With reference to *disabled* vehicles in Section B, La. R.S. 32:141 imposes a two-fold duty on drivers of vehicles stopped on a highway: (1) to remove the vehicle as soon as possible; and (2) to protect traffic until the vehicle is removed.[5] **Daniels**, 92 So. 3d at 1056.

Whether stopping on the travelled portion of the roadway constitutes negligence depends upon the circumstances of each accident. **Lawrence**, 2018 WL 990304, at *6. Courts of this state have found that it is impracticable, and therefore a motorist has no duty under La. R.S. 32:141(A), to move a vehicle off of the roadway when the motorist is stopped because of traffic caused by a prior accident. See, e.g., **Bates v. Prater**, 42,149 (La. App. 2nd Cir. 5/9/07), 956 So. 2d 814, 818, **Cambre v. Smith**, 273 So. 2d 600, 601 (La. App. 4th Cir.), writ denied,

---

[5] Section B of La. R.S. 32:141 requires that the driver of a *disabled* vehicle take reasonable steps, under the circumstances, to protect traffic until the vehicle can be removed. The law will not impose upon a person who stops in aid of a distressed motorist, a burden of care greater than that required of the driver of the disabled vehicle. **Daniels**, 92 So. 3d at 1057.

276 So. 2d 701 (La. 1973), **Royer v. Travelers Indem. Co.**, 251 So. 2d 116, 118 (La. App. 3rd Cir. 1971), and **Dixie Highway Exp. v. C. C. Galbraith & Son**, 61 So. 2d 218, 221 (La. App. Orl. Par. 1952).

In support of their motions for summary judgment, the defendants submitted the verified and sworn pertinent traffic accident reports; photographs from the scene of the accidents; excerpts of the deposition of Louisiana State Trooper Samuel Lorio who investigated the accident at issue; and excerpts of the depositions of the drivers involved in the multiple accidents, including Torres, Hernandez, Donald Mistretta, Curtis J. Callegan, Scottie P. Smith, Cory C. Mouret, and Kendell Taylor.

Torres, who was rear-ended in the collisions that occurred in front of Hernandez, testified that he was able to view the fog before entering, and that as he did, he reduced his speed to ten miles per hour. Torres stated that he could only see three to five meters in front of his tractor truck due to the fog. Seconds after coming to a stop behind the preceding vehicle (Albert) and engaging his hazard lights, Torres felt an impact from behind, and then seconds later, felt a second impact.

Hernandez testified that he was able to view the fog before entering it, and accordingly, reduced his speed from 40 miles per hour to 15 miles per hours. Hernandez testified that he travelled three to five miles into the fog, which became thicker, so that he could only see approximately ten meters ahead of his truck. When Hernandez came upon Gouthier's stopped tractor truck that had engaged its hazard lights, Hernandez braked and came to a complete stop. Hernandez testified that he engaged his emergency hazard lights and waited for the truck in front of him to proceed along the highway. Two minutes later, Hernandez testified that he felt an impact from behind; a minute after that, he felt another impact, and moment later, felt a third, harder impact. Hernandez testified that he did not exit his vehicle

nor put out warning cones or triangles because it was risky and he feared being run over due to the impaired visibility caused by the fog.

Trooper Lorio, who investigated and prepared the accident report, testified that the heavy fog affected all the motorists involved in the accident. Trooper Lorio stated that the fog he encountered was so heavy that he could not see past the bumper of his vehicle. Trooper Lorio further testified that in his investigation, he determined that Hernandez had come to a complete stop in the roadway due to the vehicle stopped in front of him because of the first set of collisions, and thereafter, Jenkins followed, and struck Hernandez in the rear of his trailer. Trooper Lorio found no skid marks to indicate that Jenkins had braked in any way prior to impacting with Hernandez.

Hernandez's testimony was corroborated by the deposition testimony of the other drivers involved in the accident. All of the drivers stated that while driving on the date and at the time in question, they entered a thick fog at this point on Louisiana Highway 1 that greatly reduced their visibility.

In opposition, the plaintiffs argued that Hernandez had a statutory duty under La. R.S. 32:141 to move his stopped vehicle off the roadway. The plaintiffs argued that having established an affirmative duty on the part of Hernandez to move his vehicle from the roadway, summary judgment cannot be granted on the issue of duty. The plaintiffs maintained that the defendants' arguments regarding the conditions at the time of the accident merely go to the question of whether, given the duty imposed on Hernandez, the circumstances surrounding the accident reduced the fault that should be placed on Hernandez for his failure to fulfill that duty. The plaintiffs also argued that there was a genuine issue of material fact as to whether Jenkins first rear-ended Hernandez's trailer versus whether Jenkins was struck from behind by other vehicles, which then caused him to collide with Hernandez's trailer. The plaintiffs contended that there was conflicting testimony

12

that Jenkins rear-ended Hernandez's trailer and rotated versus testimony that Jenkins was struck from behind by other vehicles which then caused him to collide with Hernandez's trailer. The plaintiffs averred that based on these disputed facts, the defendants could not rely on a presumption that Jenkins was initially at fault in causing this part of the accident.[6] In support of their opposition, the plaintiffs submitted excerpts of the deposition testimony of Mistretta and Trooper Lorio.

From our *de novo* review of the evidence submitted for purposes of the motions for summary judgment, we find that the defendants met their burden to point out the absence of factual support for one or more elements essential to the plaintiffs' negligence claim, but the plaintiffs have failed to come forward with evidence establishing that that there is a genuine issue as to material fact that Hernandez had a duty to move his tractor truck off of the highway.

Once confronted with the fog, Hernandez reacted by slowing his speed as to maintain control of his tractor truck and trailer and, upon seeing brake lights in front of him, brought his tractor truck to a complete stop and safely avoided a collision with the preceding vehicle. The testimony of the other drivers established that they too slowed their speed and applied their brakes once confronted with the zero-visibility conditions and that these motorists stopped or attempted to stop their vehicles on the roadway, although most were ultimately unsuccessful in avoiding collisions. Therefore, there is no conflicting evidence that once confronted with zero-visibility conditions, Hernandez exercised reasonable care by reducing his speed, maintaining a close lookout, stopping his tractor truck behind the stopped

---

[6] The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway. La. R.S. 32:81(A). The law has established a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of conduct prescribed for following motorist in La. R.S. 32:81(A). **Johnson v. Magitt**, 2012-0200 (La. App. 1st Cir. 9/21/12), 111 So. 3d 11, 12. The rule is based on the premise that a following motorist whose vehicle rear-ends a preceding motorist either has failed in his responsibility to maintain a sharp lookout or has followed at a distance from the preceding vehicle that is insufficient to allow him to stop safely under normal circumstances. **Johnson**, 111 So. 3d at 13.

preceding vehicle, and engaging his hazard lights to warn oncoming motorists that he was stopped.

The evidence further demonstrates that in the two minutes he was stopped, Hernandez was assessing the traffic situation in front of him and believed that traffic would move forward, unaware of the two rear-end collisions involving three vehicles that had occurred in front of Gouthier's stopped tractor truck. Hernandez had no intention to remain stopped at his location for an appreciable length of time and was stopped for only two minutes before his trailer was first impacted. Based on the specific facts and circumstances of this matter, La. R.S. 31:141 is inapplicable. We have found no case wherein La. R.S. 31:141 was applied to a vehicle stopped on a roadway because of congested traffic caused by prior accidents.

Furthermore, we note that the conflicting testimony submitted by the plaintiffs in opposition as to whether Jenkins first rear-ended Hernandez's trailer versus whether Jenkins was struck from behind by other vehicles, which then caused him to collide with Hernandez's trailer, does not create a genuine issue of material fact as to whether Hernandez had a duty or breached a duty to move his stopped vehicle from the roadway.

Accordingly, because the plaintiffs failed to come forward with evidence creating a genuine issue of material fact establishing that Hernandez had a duty move his vehicle from the roadway under the undisputed facts of this case, the trial court was correct in finding that the defendants were entitled to summary judgment.[7]

_____

[7] We pretermit discussion of any remaining assignments of error.

**DECREE**

The trial court's March, 26, 2019 judgment is hereby affirmed. All costs of this appeal are assessed to the plaintiffs, Mary Jenkins, Donna Jenkins, and Dominique Jenkins.

**AFFIRMED.**